UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| KENNETH BYRD,  )<br>  )<br>       Plaintiff,  )<br>  )<br>      v.  )<br>  )<br>MOTT MACDONALD GROUP,  )<br>INC.,  )<br>  )<br>       Defendant.  ) | Case No. 2:23- |

**PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Kenneth Byrd, by and through the undersigned counsel, hereby complains against Defendant Mott MacDonald Group, Inc., as follows:

**INTRODUCTION**

1. This case arises under the Federal Family Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA")(Counts I-II), and violation of the Massachusetts Paid Family and Medical Leave Law, Mass. Gen. L. c. 175M, ("PFML") (Count III-IV).

2. This case challenges Defendant's unlawful interference with Plaintiff's right to take protected leave under the FMLA and PFML and discrimination and retaliation against Plaintiff for taking protected leave.

**THE PARTIES**

3. Plaintiff Kenneth Byrd ("Byrd") is an individual residing in the City of Saco, County of York, and State of Maine. At all times relevant, Byrd was a Maine resident, and a Massachusetts employee working out of the West Springfield office.

1

4. Defendant Mott MacDonald Group Inc., ("Mott MacDonald") is a global engineering, management, and development firm with corporate headquarters in Iselin, New Jersey.

5. Mott MacDonald has more than 500 employees.

## JURISDICTION AND VENUE

6. Prior to filing this Complaint, Byrd filed a charge of discrimination with the Massachusetts Commission Against Discrimination ("MCAD") and the EEOC. Plaintiff will amend this Complaint once he has received a notice of the right to sue.

7. Venue is proper in this Court based on diversity of the parties.

8. The Court has federal question subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331.

## BACKGROUND FACTS

9. Byrd is a 63-year-old male with decades of professional experience in the field of oil and gas pipeline engineering.

10. Byrd's principal place of employment was in West Springfield, Massachusetts though he traveled frequently.

11. Byrd believes that Mott MacDonald has engaged in:

(A) disability discrimination under the Americans with Disabilities Act ("ADA");

(B) age discrimination under the Age Discrimination in Employment Act ("ADEA");

    (C)    retaliation against me for requesting an accommodation under the ADA.

    (D)    violations of the Massachusetts Fair Employment Practices Act, M.G.L. c. 151B, based on my age and disability status; and

    (E)    violations of the Federal Family Medical Leave Act and Massachusetts Paid Family Medical Leave Law.

    12.    Byrd filed a Complaint of Discrimination dual filed with both the Massachusetts Commission Against Discrimination and the Equal Employment Opportunity Commission on October 23, 2023.

    13.    Most recently, Byrd worked as a Senior Vice President of Field Services at Mott MacDonald.

    14.    Byrd worked for Mott McDonald in various roles for 22 years. For seven years he worked as an independent contractor for Mott MacDonald. He worked as a regular full-time employee at Mott MacDonald for about 15 years.

    15.    Before Mott MacDonald, Byrd worked in engineering and consulting in the oil industry for various companies.

    16.    Byrd believes he performed his job duties satisfactorily and his performance feedback at Mott MacDonald was very positive. He consistently received high performance bonuses annually.

    17.    In 2008 Byrd won an internal global competition for Mott MacDonald as the Project Manager of the Year for North America.

18. Byrd suffers from a medical condition that meets the definition of a disability under Massachusetts and Federal Law.

19. Byrd was diagnosed with mouth cancer in 2020. He underwent cancer treatment from December 2020 through 2021 and took a medical leave of absence. However, he continued to make himself available to the company and clients during this time.

20. The radiation treatment left Byrd without teeth and he required a feeding tube until early 2023. This condition impacted Byrd's ability to speak and eat.

21. Byrd continues to receive treatment related to his cancer diagnosis.

22. Although he has an impairment, he was always able to perform the essential functions of his job with accommodations.

23. Byrd continued to need occasional time during business hours to attend medical appointments related to his cancer diagnosis and treatment.

24. Byrd's disability and time off from work did not prevent him from having strong performance in sales and business development.

25. In 2018-2019, Byrd brought in two contracts to Mott MacDonald for over $15 million.

26. In 2020, Byrd secured a contract worth around $48 million with Energy Transfer that would bring in revenue for the following three years. Byrd was the only representative from Mott MacDonald that made connections with Energy Transfer to secure this particular contract.

27. In 2022, Mott MacDonald distributed a survey to 100 people within the organization based on Senior Management's likeability, knowledge, and communication. Byrd scored the best among all reviewed with no negative feedback.

28. In December of 2022, Byrd was notified that the Field Services division would be eliminated from the Energy Group and thus his position as Senior Vice President of Field Services would be eliminated as of January 1, 2023.

29. At the same time, Mott MacDonald let go another Senior Vice President, Randy Spence ("Spence"), that was 65 years old at the time.

30. Spence and Byrd were the only members of management eliminated from the Energy Group at Mott MacDonald.

31. Byrd was offered a position with Mott MacDonald as an "In-House Consultant." However, the position was not a salaried position, and he would only be compensated for billable work.

32. Byrd believes he was offered the In-House Consultant position so Mott MacDonald could avoid paying certain benefits full-time employees are entitled to and to avoid paying Byrd severance under the company's benefit plan of two weeks salary for each year of employment.

33. Byrd was not provided adequate time to consider the offer to become an In-House Consultant. Byrd was notified on Monday and was required to provide an answer as of Friday.

34. On January 1, 2023, Byrd began his role as an In-House Consultant, but he continued to perform many of the same duties as he had when employed as

5

the Senior Vice President. However, much of that work was not billable and therefore Byrd was not compensated for it.

35. Byrd received de minimis assignments that provided billable work.

36. As a Senior Vice President Byrd had about 30-80 individuals working under his supervision depending on project needs.

37. The Field Services division at Mott MacDonald was never eliminated.

38. In late October/early November of 2023, Rick Walker became the Senior Vice President of Field Services.

39. Therefore, Mott MacDonald's reasons for terminating Byrd as the Senior Vice President of Field Services was false and a pretext for discrimination and retaliation.

40. Michael Wilcox assumed supervision of some of these employees when Byrd was terminated from the Senior Vice President position. Wilcox is 10-20 years younger than him.

41. In February of 2023, Byrd went out on a medical leave of absence and took Short Term Disability. Under the benefit plan Mott MacDonald is supposed to pay 2/3 of the benefits and insurance pays 1/3. However, Mott MacDonald never paid their portion of the benefits because Byrd was an hourly employee, not a full-time employee. Likewise, Byrd was no longer entitled to employer contributions to his retirement plan because he was an hourly employee, not a full-time employee

42. Byrd believes Mott MacDonald intentionally interfered with and discriminated against him in violation of the FMLA and PFML by terminating his employment as the Senior Vice President of Field Services.

## COUNT I – FMLA INTERFERENCE
### (29 U.S.C. § 2615(a)(1))

43. Plaintiff repeats the allegations contained in Paragraphs 1 through 42 as if fully stated herein.

44. Defendant Mott MacDonald is an employer within the meaning of the FMLA, employing at least 50 employees for each of 20 or more calendar weeks from 2016 to the present.

45. On January 1, 2023, the date of Byrd's termination from the Senior Vice President of Field Services position, Byrd was eligible and qualified for leave under the FMLA.

46. Defendant employed Plaintiff for at least 1,250 hours of service during the 12-month period immediately preceding the need for FMLA-protected leave.

47. Defendant was aware of Byrd's medical condition and likely need for additional FMLA-qualifying leave.

48. At all times herein relevant and material, Plaintiff suffered from his own serious health condition within the meaning of the FMLA.

49. Defendant interfered with Byrd's substantive rights under the FMLA by taking adverse action against Byrd for taking protected leave restraining the benefits

available to him, by discipling him by way of demotion for taking time off that should have been protected and compensable under the FMLA.

50. As a result of Defendant's FMLA interference, Byrd has suffered and is entitled to damages, including but not limited to lost wages and lost employee benefits, back pay, front pay, attorney's fees, costs, and expenses.

51. Defendant's violation of the FMLA was willful, justifying an award of liquidated damages under the FMLA.

WHEREFORE, Plaintiff Kenneth Byrd requests that the Court award him damages for Defendant's violation of the FMLA in the form of lost back pay, front pay, liquidated damages, attorney's fees, costs and expenses, equitable and injunctive relief as set forth below, pre and post judgment interest, and all other relief afforded her by law.

## COUNT II – FMLA RETALIATION AND DISCRIMINATION
### (29 U.S.C. § 2615(a)(2))

52. Plaintiff repeats the allegations contained in Paragraphs 1 through 51 as if fully stated herein.

53. In addition to the allegations set forth above, Defendant discriminated against Byrd by terminating his full-time employment for taking FMLA-protected leave.

54. Defendant took adverse action against Byrd for exercising his rights under the FMLA.

55. Defendant retaliated against Byrd for exercising his rights under the FMLA or for needing leave that was protected under the FMLA.

56. As a result of Defendant's FMLA retaliation and discrimination, Byrd has suffered and is entitled to damages, including but not limited to lost wages and benefits, back pay, front pay, attorney's fees, costs, and expenses.

57. Defendant's violation of the FMLA was willful, justifying an award of liquidated damages under the FMLA.

WHEREFORE, Plaintiff Kenneth Byrd requests that the Court award him damages for Defendant's violation of the FMLA in the form of lost back pay, front pay, liquidated damages, attorney's fees, costs and expenses, equitable and injunctive relief as set forth below, pre and post judgment interest, and all other relief afforded to him by law.

## COUNT III – INTERFERENCE UNDER THE MASSACHUSETTS PAID FAMILY MEDICAL LEAVE LAW
### Mass. Gen. L. c. 175M

58. Plaintiff repeats the allegations contained in Paragraphs 1 through 57 as if fully stated herein.

59. For all the reasons set forth above, Defendant has unlawfully interfered with, restrained, or denied Plaintiff's rights in violation of the Massachusetts PFML Law.

60. For Defendant's violation of the PFML, Plaintiff is entitled to damages equal to the wages, salary, employment benefits or other compensation denied to or lost by Byrd, as well as injunctive relief to enjoin Mott MacDonald's ongoing violations of the PFML.

WHEREFORE, Plaintiff Kenneth Byrd requests that the Court award him damages for Defendant's violation of the PFML in the form of lost back pay, front pay,

civil penalties, liquidated damages, attorney's fees, costs and expenses, equitable and injunctive relief as set forth below, pre and post judgment interest, and all other relief afforded to her by law.

### COUNT IV – UNLAWFUL DISCRIMINATION AND RETALIATION UNDER THE MASSACHUSETTS PAID FAMILY LEAVE LAW
### Mass. Gen. L. c. 175M

61. Plaintiff repeats the allegations contained in Paragraphs 1 through 60 as if fully stated herein.

62. For all the reasons set forth above, Defendant has unlawfully discriminated against Plaintiff in violation of the Massachusetts Paid Family Medical Leave Law, by discharging, demoting, suspending, expelling, disciplining, or otherwise discriminating against Plaintiff for exercising his rights under the PFML.

63. For Defendant's discrimination in violation of the PFML, Plaintiff is entitled to the damages set forth in Count III above.

WHEREFORE, Plaintiff Kenneth Byrd requests that the Court award him damages for Defendant's violation of the PFML in the form of lost back pay, front pay, penalties, liquidated damages, attorney's fees, costs and expenses, equitable and injunctive relief as set forth below, and all other relief afforded to Plaintiff.

### COUNT V – ERISA § 510 INTERFERENCE
### (29 U.S.C. § 1140)

64. Plaintiff repeats the allegations contained in Paragraphs 1 through 63 as if fully stated herein.

65. ERISA § 510 provides that: "It shall be unlawful for any person" to "discriminate against a participant or beneficiary . . . for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, this title, or the Welfare and Pension Plans Disclosure Act."

66. The benefits discussed above were part of an employee benefit plan within the meaning of ERISA.

67. Because he was an employee of the Mott MacDonald, as set forth above, Byrd was a "participant" of the Plan within the meaning of ERISA section 510.

237. Byrd was entitled to benefits under the Plan and he met all requirements for participation under the Plan.

238. Defendant interfered with Byrd's ability to collect benefits under the Plan in the same manner as other employees of the Mott MacDonald were allowed to participate in the Plan.

239. Defendant interfered with Byrd's rights under ERISA and prohibited him from obtaining severance for position elimination which other employees received and prevented him from receiving certain benefit payments while out on medical leave of absence because he was no longer a full-time employee.

241. Defendant's discriminatory treatment of Byrd was undertaken with the specific intent to deprive him of employee benefits under the Plan.

242. Defendants' discriminatory treatment of Byrd and change of his employment status was undertaken with the specific intent to deprive him of

retirement benefits and employer contributions, severance payment, and leave benefits.

243. Defendants' desire to interfere with Byrd's right to participate in the Plan was a motivating factor behind his demotion to hourly employee as an In House Consultant.

244. Because this is a statutory claim, the terms of the Plan do not require administrative exhaustion.

245. Alternatively, any administrative exhaustion requirement that existed does not apply in this case because an appeal would have been futile.

WHEREFORE, Plaintiff Kenneth Byrd requests that the Court enter judgment in his favor and against Defendant and award him all equitable, statutory, and compensatory damages available under ERISA § 510, along with attorney's fees, costs and expenses, and all other relief afforded by law.

## JURY TRIAL DEMAND

Plaintiff Kenneth Byrd hereby demands a jury trial on all matters so triable under the laws and Constitution of the United States and the State of Maine.

Respectfully submitted,

Dated: November 20, 2023		/s/ Danielle Quinlan

		_____
		Danielle Quinlan, Bar No. 5480
		*Attorney for Plaintiff*
		WHITE & QUINLAN, LLC
		62 Portland Rd., Suite 21
		Kennebunk, ME 04043
		(207) 502-7484
		dquinlan@whiteandquinlan.com

		/s/ Laura H. White

		_____
		Laura H. White, Bar No. 4025
		*Attorney for Plaintiff*
		WHITE & QUINLAN, LLC
		62 Portland Rd., Suite 21
		Kennebunk, ME 04043
		(207) 502-7484
		lwhite@whiteandquinlan.com