UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| KENNETH BYRD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:23-cv-00431-SDN |
| | ) | |
| MOTT MACDONALD GROUP, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## <u>ORDER ON MOTION TO DISMISS</u>

Defendant Mott MacDonald Group, Inc. ("Mott MacDonald") moves to dismiss (ECF No. 37) all eight counts of Plaintiff Kenneth Byrd's amended complaint (ECF No. 36). Byrd's amended complaint alleges Mott MacDonald violated the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq*., the Massachusetts Paid Family and Medical Leave Act ("PFML"), Mass. Gen. Laws ch. 175M (2025), the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq*., the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*., the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq*., and the Massachusetts Fair Employment Practices Act ("FEPA"), Mass. Gen. Laws. ch. 151B, § 1 *et seq*. (2025), by discriminating and retaliating against him for taking protected leave and because of his age and disability. *See generally* ECF No. 36. For the following reasons, Mott MacDonald's renewed motion to dismiss (ECF No. 37) is GRANTED.

## I.    Factual Background

I draw the following facts from Byrd's amended complaint (ECF No. 36), treat those facts as true, and draw all reasonable inferences in Byrd's favor for purposes of

resolving Mott MacDonald's motion to dismiss. *See Alston v. Spiegel*, 988 F.3d 564, 571 (1st Cir. 2021).

Byrd resides in Saco, Maine, but worked out of Mott MacDonald's Springfield, Massachusetts office. Am. Compl. (ECF No. 36), at ¶¶ 3, 10. Mott MacDonald is a global engineering, management, and development firm headquartered in New Jersey. *Id.* at ¶ 4. Mott MacDonald has more than 500 employees. *Id.* at ¶ 5.

Byrd is a sixty-three-year-old man with decades of professional experience in the oil and gas pipeline engineering field. *Id.* at ¶ 9. Most recently, Byrd worked as a Senior Vice President of Field Services at Mott MacDonald. *Id.* at ¶ 13. Byrd worked for Mott MacDonald in various roles for twenty-two years. *Id.* at ¶ 14. For seven of those years, he worked as an independent contractor for Mott MacDonald. *Id.* For the other fifteen years, Byrd worked as a regular full-time employee. *Id.* Byrd had a career in engineering and consulting in the oil industry before he worked at Mott MacDonald. *Id.* at ¶ 15. Byrd performed his job duties satisfactorily and received "very positive" feedback on his performance, as well as high annual performance bonuses. *Id.* at ¶ 16. In 2008, Mott MacDonald named Byrd the Project Manager of the Year for North America. *Id.* at ¶ 17. In his role as senior vice president, Byrd supervised about thirty to eighty individuals depending on project needs. *Id.* at ¶ 36.

Byrd was diagnosed with mouth cancer in 2020 and received treatment for it from December 2020 "through 2021." *Id.* at ¶ 19. He took a medical leave of absence during his treatment but continued to make himself available to the company and clients while on leave. *Id.* The radiation treatment left Byrd without teeth and he required a feeding tube until early 2023. *Id.* at ¶ 20. Byrd's condition impacted his ability to speak and eat. *Id.* Byrd continues to receive cancer treatment. *Id.* at ¶ 21. Though impaired by his condition,

Byrd was "always able" to perform the essential functions of his job with accommodations. *Id.* at ¶ 22. He continued to require occasional time during business hours to attend medical appointments related to his cancer treatment. *Id.* at ¶ 23.

Byrd's disability and time off from work did not prevent him from having strong performance in sales and business development. *Id.* at ¶ 24. In 2020, Byrd secured a contract with Energy Transfer worth about $48 million that would bring in revenue for the following three years. *Id.* at ¶ 26. Byrd was the only Mott MacDonald employee that made connections with Energy Transfer to secure this contract. *Id.* In 2022, Mott MacDonald distributed a survey to 100 people within the company inquiring about senior management's likeability, knowledge, and communication. *Id.* at ¶ 27. Byrd scored the highest among all members of senior management and received no negative feedback. *Id.*

In December 2022, Mott MacDonald notified Byrd that the field services division would be eliminated from the company's energy group and therefore his position as Senior Vice President of Field Services would be eliminated as of January 1, 2023. *Id.* at ¶ 28. At the same time, Mott MacDonald let go another senior vice president, Randy Spence, who was sixty-five years old at the time. *Id.* at ¶ 29. Spence and Byrd were the only members of management eliminated from Mott MacDonald's energy group. *Id.* at ¶ 30.

Mott MacDonald offered Byrd a position as an "In-House Consultant," which was not a salaried position; rather, Byrd would be compensated only for billable work. *Id.* at ¶ 31. Byrd believes Mott MacDonald offered him this position to avoid paying for benefits full-time employees are entitled to and to avoid paying Byrd severance under the company's benefit plan of two weeks' salary for each year of employment. *Id.* at ¶ 32. Byrd

was notified of the offer to continue as an in-house consultant on a Monday and was required to provide Mott MacDonald an answer that Friday. *Id.* at ¶ 33.

On January 1, 2023, Byrd began working for Mott MacDonald as an in-house consultant, but he continued to perform many of the same duties as he had when he was a senior vice president. *Id.* at ¶ 34. Much of the work was not billable and Byrd was not compensated for it. *Id.* Byrd received minimal billable assignments. *Id.* at ¶ 35. After Mott MacDonald terminated Byrd from his senior vice president position, some of Byrd's former supervisees began to be supervised by Michael Wilcox, who is ten to twenty years younger than Byrd. *Id.* at ¶ 40.

In February 2023, Byrd took a medical leave of absence and short-term disability. *Id.* at ¶ 41. Under Mott MacDonald's short-term disability benefit plan, Mott MacDonald pays two-thirds of the benefit and insurance pays the remaining one third. *Id.* Mott MacDonald did not pay Byrd the two-thirds short-term disability "top off" benefit because he was no longer a full-time employee. *Id.* Byrd was also no longer entitled to employer contributions to his retirement plan because he was no longer a full-time employee. *Id.*

Mott MacDonald never eliminated the field services division. *Id.* at ¶ 37. Some time around late October or early November 2023, Mott MacDonald hired Rick Walker to be the new Senior Vice President of Field Services. *Id.* at ¶ 38.

## II.     Procedural History

This case has a rather long and tortured procedural history for a case that has not, until now, been ripe for decision on the merits of Mott MacDonald's motion to dismiss. Byrd brought a five-count complaint against Mott MacDonald asserting several violations of fair employment statutes on November 20, 2023 (ECF No. 1). After ninety days had expired since Byrd filed his complaint and service of process still had not been

4

accomplished, the Court issued an Order to Show Cause why service was not timely made on February 23, 2024 (ECF No. 4). Byrd responded on March 8, 2024 (ECF No. 5), and the Court terminated the Order to Show Cause on March 11, 2024 (ECF No.6), extending the time for Byrd to complete and file proof of service to April 12, 2024 (ECF No. 7). Byrd submitted Mott MacDonald's executed waiver of service on April 10, 2024 (ECF No. 8).

Mott MacDonald moved to dismiss Byrd's complaint on May 15, 2024 (ECF No. 14). After seeking and being granted two extensions to respond (*see* ECF Nos. 16–20), Byrd responded in opposition to Mott MacDonald's motion to dismiss on July 10, 2024 (ECF No. 21). On July 31, 2024, Byrd submitted an Unopposed Motion to Amend Opposition to Defendant's Motion to Dismiss after "Defendant's counsel reached out to Plaintiff's counsel regarding what [Defendant's counsel] believed to be inaccuracies in the opposition." ECF No. 24 at 1. "After Plaintiff's counsel conferred with Plaintiff, [Plaintiff's counsel was] in agreement that there [were] some inaccuracies that need[ed] to be corrected." *Id.* Byrd's request to amend his opposition was granted on August 1, 2024, and Byrd was directed to file the amended opposition by August 2, 2024 (ECF No. 25). Byrd filed his amended opposition on August 9, 2024 (ECF No. 26). Mott MacDonald replied on August 23, 2024 (ECF No. 27). The motion to dismiss (ECF No. 14) was taken under advisement on August 26, 2024.

While the motion to dismiss was under advisement, Byrd moved to amend his complaint to add three more claims against Mott MacDonald on October 25, 2024 (ECF No. 28). Mott MacDonald responded in opposition on November 15, 2024, arguing amendment would be futile (*see* ECF No. 30 at 1). Byrd replied on December 2, 2024 (ECF No. 31). Thereafter, Mott MacDonald sought (ECF No. 32) and was granted (ECF No. 33)

leave to file a sur-reply "in order to address issues raised in Plaintiff's Reply" (ECF No. 32 at 1). Mott MacDonald filed its sur-reply on December 26, 2024 (ECF No. 34).

On January 28, 2025, Magistrate Judge Nivison granted Byrd's motion to amend his complaint (ECF No. 35). Byrd filed his amended complaint on January 28, 2025 (ECF No. 36). On February 11, 2025, Mott MacDonald filed its renewed motion to dismiss (ECF No. 37). Byrd responded in opposition on March 4, 2025 (ECF No. 38), and Mott MacDonald replied on March 18, 2025 (ECF No. 39). After briefing on the renewed motion to dismiss was complete and the motion had been under advisement for approximately ten days, on March 28, 2025, Mott MacDonald moved for oral argument and an evidentiary hearing at the invitation of the Court (*see* ECF No. 35 at 9) on the applicability of equitable tolling (ECF No. 41). The Court granted this request and scheduled an evidentiary hearing before Byrd's response was due (*see* ECF Nos. 41–43).

On May 5, 2025, Byrd moved to reconsider the Court's order granting Mott MacDonald's request for an evidentiary hearing, arguing he had not raised and did not plan on raising an equitable tolling theory to support his claims and therefore an evidentiary hearing before any discovery began in the case was not necessary (*see generally* ECF No. 44). Mott MacDonald responded in opposition on May 13, 2025 (ECF No. 45), and Byrd replied on May 14, 2025 (ECF No. 46). The Court granted Byrd's motion for reconsideration on May 19, 2025, vacating its prior order granting Mott MacDonald's motion for an evidentiary hearing and the order scheduling the evidentiary hearing (ECF No. 47).

On May 23, 2025, Mott MacDonald filed a motion for leave to file supplemental briefing based on Byrd's representation that he would not be pursuing an equitable tolling theory and would instead be pursuing a continuing violation theory (*see generally* ECF

No. 49). Byrd responded in opposition to the motion for leave to file supplemental briefing on June 6, 2025 (ECF No. 50), and Mott MacDonald did not reply (*see* Dkt. No. 2:23-cv-00431-SDN). The Court granted Mott MacDonald's motion for leave to file supplemental briefing on June 16, 2025 (ECF No. 51). Mott MacDonald filed its supplemental brief on June 17, 2025 (ECF No. 52), Byrd responded in opposition on July 8, 2025 (ECF No. 53), and Mott MacDonald replied on July 23, 2025 (ECF No. 54). Finally, the merits question of whether Byrd has stated claims upon which relief can be granted is ripe for decision.

### III.    Legal Standard

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint and requires a court to determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has pled a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When ruling on a Rule 12(b)(6) motion, a court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012). A complaint that offers only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Further, if the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [those claims] must be dismissed." *Id.* at 570.

## IV.    Discussion

Mott MacDonald moves to dismiss all eight of Byrd's counts in his amended complaint. I consider each count in turn to determine whether Byrd's factual allegations narrate a plausible claim for relief.

### A.  FMLA Interference

Mott MacDonald argues Byrd's claim of FMLA interference should be dismissed for two reasons: (1) Mott MacDonald did not deny Byrd a benefit he was entitled to under FMLA; and (2) even if it did deny him a FMLA entitlement, Mott MacDonald did not have notice of Byrd's intent to take protected leave at the time Mott MacDonald eliminated the benefit. ECF No. 37-1 at 4–8. Byrd argues he has stated a claim for FMLA interference because his loss of eligibility for "the additional company-funded supplemental paid leave"[1] discouraged him from taking leave he was entitled to under FMLA. ECF No. 38 at 3.

"The FMLA was enacted to help working women and men balance the competing demands of work and personal life." *Carrero-Ojeda v. Autoridad de Energía Eléctrica*, 755 F.3d 711, 718 (1st Cir. 2014). Under FMLA, eligible employees are entitled to a total of twelve workweeks of leave (which may be unpaid) in a twelve-month period for a qualifying personal or family medical event. 29 U.S.C. § 2612(a)(1). During FMLA leave, the employee is entitled to maintain their group health benefits. *Id.* § 2614(c)(1). Upon return from FMLA leave, the employee is entitled to be restored to the position they held

---

[1] It appears from Byrd's opposition brief—but is not stated specifically—that the FMLA benefit he claims Mott MacDonald interfered with is "top off" short-term disability benefits. *See* ECF No. 38 at 3 ("Defendant interfered with his rights by removing him from his full time position and thus denying him from the additional company-funded supplemental paid leave."). Even if that is not the benefit to which Byrd refers, Byrd has not clearly alleged any entitlement with which Mott MacDonald interfered. Where the Court is left to guess what exactly the plaintiff is claiming, the complaint has not stated a plausible claim for relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

prior to the leave period or an equivalent position. *Id.* § 2614(a)(1). It is unlawful for an employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" by the FMLA. *Id.* § 2615(a)(1).

The elements of a prima facie case of FMLA interference are as follows: "(1) [plaintiff] was eligible for the FMLA's protections; (2) [his] employer was covered by the FMLA; (3) [he] was entitled to leave under the FMLA; (4) [he] gave [his] employer notice of [his] intention to take leave; and (5) [his] employer denied [him] FMLA benefits to which [he] was entitled." *Waterman v. Paul G. White Interior Sols.*, No. 2:19-cv-00032, 2019 WL 5764661, at *2 (D. Me. Nov. 5, 2019) (quoting *Chacon v. Brigham & Women's Hosp.*, 99 F. Supp. 3d 207, 213 (D. Mass. 2015)). "The key issue is simply whether the employer provided its employee the benefits to which [he] was entitled per the FMLA." *Carrero-Ojeda*, 755 F.3d at 722.

Resisting dismissal of his FMLA interference claim, Byrd points to case law stating that the employer's intent to interfere is not a required showing and interference can include discouraging an employee from taking FMLA leave. ECF No. 38 at 4. Under Byrd's theory of FMLA interference, Mott MacDonald discouraged him from taking further FMLA leave by changing his position to an hourly position that did not include entitlement to "additional company-funded supplemental paid leave." *Id.* at 3. It is unclear from Byrd's opposition brief whether "additional company-funded supplemental paid leave" refers to the short-term disability "top off" benefit or some other company-funded benefit. *See id.* However, Byrd himself acknowledges that a prima facie case of FMLA interference requires that the benefits denied by the employer constitute entitlements *under FMLA*. *See id.* ("To make out an interference claim, Plaintiff must establish that . . . his employer denied [him] benefits *to which he was entitled by FMLA.*"

9

(emphasis added)). Indeed, the "key issue" is whether the employee received "the benefits to which [he] was entitled *per the FMLA*." *Carrero-Ojeda*, 755 F.3d at 722 (emphasis added). Byrd does not and cannot claim he was entitled to the "top off" payments or any other company-funded supplemental paid leave under the FMLA because the FMLA does not require the employer to provide for paid leave, *see* 29 U.S.C. § 2601 *et seq*., therefore his claim is fundamentally flawed. Because Byrd was never entitled to the "top off" payments or any other company-funded paid leave under FMLA, his later ineligibility for such benefits cannot give rise to a FMLA interference claim. *See Davidson v. Tyco/Healthcare*, 416 F. Supp. 2d 690, 709 (E.D. Mo. 2005), *aff'd sub. nom. Davidson v. Tyco/Healthcare Mallinckrodt, Inc.*, 205 F. App'x 469 (8th Cir. 2006) ("Plaintiff's claim regarding her short-term disability benefits and vacation pay are not actionable under FMLA. . . . Plaintiff's receipt of disability benefits and vacation pay were governed by defendant's employee welfare plan(s) and corporate policy alone. Any alleged problems regarding [plaintiff's] short-term disability benefits and vacation pay are independent of any rights [plaintiff] may be entitled to protect under FMLA.").

In addition to the paid leave theory of FMLA interference, Byrd also devotes two sentences to an alternative theory of FMLA interference, referencing his allegation that during his 2020–21 medical leave of absence, he "continued to make himself available to the company and clients while on leave." ECF No. 36 at ¶ 19; *see* ECF No. 38 at 4. He does not allege that Mott MacDonald required or encouraged him to do so, therefore I do not conclude that his allegations plausibly show "[his] employer denied [him] FMLA benefits." *Waterman*, 2019 WL 5764661, at *2 (quoting *Chacon*, 99 F. Supp. 3d at 213). This under-developed line of argument is not sufficient to save Byrd's FMLA interference claim. *See United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to

in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."). Accordingly, Byrd's Count I for FMLA Interference is DISMISSED.[2]

### B. FMLA Retaliation

Mott MacDonald argues Byrd's claim for FMLA retaliation should be dismissed because Byrd took his 2023 medical leave after the adverse employment action—his demotion to in-house consultant—therefore Mott MacDonald did not have the requisite knowledge to support a finding of retaliatory intent. ECF No. 37-1 at 11–12. In response, Byrd clarifies that he is also advancing a retaliation theory that arises from his 2020–21 medical leave of absence. *See* ECF No. 38 at 6–7. Under this theory, Byrd argues his late 2022 demotion was retaliatory in response to his 2020–21 leave of absence. *Id*. He further argues Mott MacDonald's knowledge of his continued cancer treatment led Mott MacDonald to retaliate in anticipation of his need for further FMLA leave when it demoted him in late 2022.[3] *Id*. at 7. Mott MacDonald replies that the demotion is too remote in time to support an inference of retaliatory intent. ECF No. 39 at 4–5.

Under the FMLA, it is unlawful for an employer to retaliate against an employee for exercising their FMLA rights. *Pagán-Colón v. Walgreens of San Patricio, Inc.*, 697 F.3d 1, 8 (1st Cir. 2012) (noting it is "universally recognized" that the FMLA prohibits

---

[2] In his opposition to Mott MacDonald's renewed motion to dismiss, Byrd references facts that do not appear in his amended complaint. *See* ECF No. 36; ECF No. 38 at 5. I do not consider those facts in my analysis. *See Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001) ("Ordinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment.").

[3] Byrd refers at pages 5–6 of his opposition brief to facts that do not appear in the amended complaint to support his retaliation claim. *See* ECF No. 36; ECF No. 38 at 5-6. As discussed above at footnote 2, I do not consider factual material outside of those allegations in the amended complaint. *See supra* n.2. Further, Byrd moved to amend his complaint on October 25, 2024 (*see* ECF Nos. 28, 29), which was granted on January 28, 2025 (ECF No. 35), and could have included the January 2024 allegations in his amended complaint but did not. I do not consider the January 2024 facts recited in his opposition to Mott MacDonald's renewed motion to dismiss because they are not included in his amended complaint. *See Alt. Energy, Inc.*, 267 F.3d at 33.

retaliation); *see* 29 U.S.C. § 2615(b). To make out a prima facie case of FMLA retaliation, Byrd must show: "1) [he] availed [himself] of a protected FMLA right; (2) [he] was adversely affected by an employment decision; and (3) there was a causal connection between [his] protected conduct and the adverse employment action." *Carrero-Ojeda*, 755 F.3d at 719 (quotation modified). The parties dispute the third element, whether Byrd's amended complaint contains sufficient factual allegations to plausibly support a finding that his demotion was causally connected to the exercise of his rights under the FMLA. *See* ECF No. 37-1 at 8–12; ECF No. 38 at 5–7.

"In the retaliation claim context, a causal connection can be shown by a temporal proximity between the protected conduct and the adverse action: 'temporal proximity alone can suffice to meet the relatively light burden of establishing a prima facie case of retaliation.'" *Kempton v. Delhaize Am. Shared Servs. Grp. LLC*, No. 2:14-cv-0494, 2016 WL 1069647, at *7 (D. Me. Mar. 17, 2016) (quoting *DeCaire v. Mukasey,* 530 F.3d 1, 19 (1st Cir. 2008)). However, "the inference of a causal connection becomes tenuous with the passage of time." *Dressler v. Daniel*, 315 F.3d 75, 80 (1st Cir. 2003). The parties dispute the length of time that elapsed between Byrd's FMLA leave and his demotion. Byrd asserts his medical leave of absence lasted through December 2021, *see* ECF No. 36 at ¶ 19, and he was notified of his demotion on November 30, 2022,[4] resulting in a time span of "less than one year," ECF No. 38 at 7, between Byrd's protected FMLA leave and his demotion. Mott MacDonald argues the time span is closer to two years because,

---

[4] In his amended complaint, Byrd alleges he was notified of his demotion in December 2022. ECF No. 36 at ¶ 28. However, as Magistrate Judge Nivison identified in his Order on Motion for Leave to Amend Complaint, the parties agree on November 30, 2022, as the relevant notification date. *See* ECF No. 35 at 2 n.2. Because the parties agree on the November 30, 2022, date and Judge Nivison applied that date in his analysis on the motion for leave to amend the complaint, I use the November 30, 2022, date as the date Byrd received notification of his demotion.

although Byrd began his FMLA leave in December 2020 and was on medical leave until December 2021, he had actually exhausted the twelve weeks of FMLA leave by March 2021 (twelve weeks after he began taking leave in December 2020). ECF No. 39 at 5; *see* 29 U.S.C. § 2612(a)(1) (establishing entitlement to twelve workweeks of leave in a twelve-month period for qualifying employees). Accordingly, under Mott MacDonald's view, the time span between Byrd's protected FMLA leave and notification of his demotion is "nearly two years." ECF No. 39 at 5.

I need not determine the exact length of the time span between Byrd's protected leave and his demotion because, even under Byrd's theory, the temporal proximity of almost one full year, considered in context with the complaint's lack of any allegations probative of retaliatory motive, does not "nudge[] [his] claim[] across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. As noted above, "the inference of a causal connection becomes tenuous with the passage of time," *Dressler*, 315 F.3d at 80, and Byrd has not identified any case law showing that a temporal proximity of almost a year, standing alone, is enough to plausibly support a finding of retaliation. Temporal proximity of no more than a few months could support a finding of retaliation. *See, e.g.*, *Mariani-Colón v. Dep't of Homeland Sec. ex rel. Chertoff*, 511 F.3d 216, 224 (1st Cir. 2007) (temporal proximity of two months held sufficient to establish causation); *Kempton*, 2016 WL 1069647, at *7 (temporal proximity of less than one month sufficient to establish prima facie case of retaliation). Beyond a period of a few months, the temporal proximity becomes too tenuous to infer retaliatory intent. *See, e.g., Calero-Cerezo v. U.S. Dep't of Just.*, 355 F.3d 6, 25 (1st Cir. 2004) ("Three and four month periods have been held insufficient to establish a causal connection based on temporal proximity."); *Morón-Barradas v. Dep't of Educ. of Commw. of P.R.*, 488 F.3d 472, 481 (1st Cir. 2007)

13

(temporal proximity of approximately eight months held insufficient to establish causal connection); *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 828 (1st Cir. 1991) (temporal proximity of nine months negated inference of retaliation); *O'Rourke v. Tiffany & Co.*, 988 F.3d 23, 25 (temporal proximity of more than one year is not sufficient to support retaliation claim).

Here, even crediting Byrd's calculation of a period of just under one year between the protected conduct (his protected leave) and the adverse employment action (his demotion), the inference of a causal connection is too tenuous for me to conclude his demotion was plausibly retaliatory. When cases rely solely on "mere temporal proximity" to establish retaliation, the temporal proximity must be "very close." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (quotation modified). Where Byrd has not made any allegations of "negative comments, complaints, or expressions of reluctance by [his] superiors or co-workers about [his] FMLA leave-taking, no discussion of [his] FMLA leave status in performance reviews, etc.," I cannot conclude a period of almost one year between the protected conduct and the adverse employment action plausibly raises a causal connection between the two events. *Carrero-Ojeda*, 755 F.3d at 720–21 (concluding synchronicity alone without further allegations of retaliatory intent insufficient to support a FMLA retaliation claim at the Rule 12(b)(6) stage).

Additionally, Byrd's FMLA retaliation claim cannot rest on the FMLA leave he took in February 2023 after he was demoted. "Because the employer's intent in FMLA retaliation claims is highly relevant, an employer cannot be found to have retaliated against an employee for invoking his rights under the FMLA or taking FMLA leave unless the decisionmaker knew or should have known that the employee had invoked those rights." *Chase v. U.S. Postal Serv.*, 843 F.3d 553, 558 (1st Cir. 2016). Byrd's amended

14

complaint does not allege he provided notice to Mott MacDonald of his February 2023 medical leave before he was notified of the demotion on November 30, 2022. *See generally* ECF No. 36. Byrd speculates that Mott MacDonald "may have concluded that Byrd was unhealthy and likely to need additional FMLA time," ECF No. 38 at 7, but speculation is not sufficient to survive a motion to dismiss, *see Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level . . . ."); *Chase*, 843 F.3d at 558 (finding that an employer cannot retaliate if it did not know the employee invoked their FMLA rights). Byrd's Count II for FMLA Retaliation is DISMISSED.

### C.  PFML Claims

Byrd also asserts claims under Massachusetts's PFML, Mass. Gen. Laws ch. 175M, one count for interference and one count for retaliation. ECF No. 36 at 9–11. The PFML is Massachusetts's analogue to the FMLA. Among other differences, the PFML provides employees with paid leave whereas FMLA leave may be unpaid. *Compare* Mass. Gen. Laws ch. 175M, § 1 *et seq.*, *with* 29 U.S.C. § 2601 *et seq.* The PFML makes it unlawful for an employer to "retaliate by . . .  in any [] manner discriminating against an employee for exercising any right to which such employee is entitled under this chapter or with the purpose of interfering with the exercise of any right to which such employee is entitled under this chapter." Mass. Gen. Laws ch. 175M, § 9(a). Because the PFML has similar language and objectives as FMLA and Byrd makes no argument for any independent methods of evaluating his claims under PFML, *see* ECF No. 38 at 7–8, my analysis of Byrd's FMLA claims and his PFML claims is the same. *See Tardiff v. Laborers Int'l Union of N. Am. Loc. Union 609*, No. 4:23-cv-40115, 2025 WL 2374000, at *12 (D. Mass. Aug.

15, 2025) (using First Circuit FMLA precedent to analyze PFML claims). Accordingly, Byrd's PFML claims, Counts III and IV, are DISMISSED.

### D. ERISA Interference

Count V of Byrd's amended complaint alleges Mott MacDonald interfered with Byrd's ability to collect benefits under an ERISA plan in violation of Section 510 of ERISA, 29 U.S.C. § 1140. ECF No. 36 at 11–12. Mott MacDonald argues Byrd's ERISA claim should be dismissed because the short-term disability "top off" benefit is not an ERISA plan and because Byrd has not brought forth sufficient facts to plausibly allege Mott MacDonald had specific intent to interfere with his ERISA rights. ECF No. 37-1 at 15–19. As to whether Byrd alleges the existence of an ERISA plan, he argues there is no evidence the benefits are not part of an ERISA plan and that discovery is appropriate to determine the existence of an ERISA plan. ECF No. 38 at 8–9. He further argues Mott MacDonald intentionally gave Byrd the in-house consultant position to avoid paying him severance and the "top off" benefit.[5] *Id.* at 9. Mott MacDonald replies that Byrd's ERISA claim is based solely on legal conclusions and therefore must be dismissed. ECF No. 39 at 5–7.

It is unlawful for an employer to "discharge, fine, suspend, expel, discipline, or discriminate against a participant . . . for the purpose of interfering with the attainment of any right to which such participant may become entitled" under an ERISA plan. 29 U.S.C. § 1140. To establish a prima facie case of ERISA interference, Byrd must show

---

[5] Byrd refers to employer contributions to his retirement plan in his amended complaint but makes no argument in his opposition to Mott MacDonald's motion to dismiss that his ERISA claim is based on the loss of employer contributions to his retirement plan. *See* ECF No. 36 at ¶¶ 41, 72; *see generally* ECF No. 38. Under D. Me. Local R. 7(b), "[f]ailure to respond [to an argument in a] motion to dismiss means that opposition to the motion is waived . . . and the motion may be granted for that reason alone." *Andrews v. Am. Red Cross Blood Servs., New Eng. Region*, 251 F. Supp. 2d 976, 979 (D. Me. 2003); *see* D. Me. Local R. 7(b). Byrd has waived any argument that losing employer contributions to his retirement plan constitutes ERISA interference.

"that he was prospectively entitled to ERISA benefits, was qualified for his position, and was [demoted] 'under circumstances that give rise to an inference of discrimination.'" *Cameron v. Idearc Media Corp.*, 685 F.3d 44, 48 (1st Cir. 2012) (quoting *Lehman v. Prudential Ins. Co. of Am.*, 74 F.3d 323, 330 (1st Cir.1996)). In order for Byrd to move forward with his claim of ERISA interference, he must allege facts that plausibly narrate the existence of an ERISA plan. *See White v. Bell Atl. Yellow Pages*, No. Civ.A. 01–10157, 2004 WL 594957, at *7 (D. Mass. Mar. 23, 2004) ("If there is no ERISA 'plan,' there is no ERISA claim."); *Díaz-O'Neill v. P.R. Aqueduct & Sewer Auth.*, No. 22-1024, 2022 WL 18635600, at *5 (D.P.R. Dec. 27, 2022) (dismissing an ERISA claim on Rule 12(b)(6) grounds where the complaint did not allege enough facts for the court to infer the existence of an ERISA plan).

"The precise coverage of ERISA is not clearly set forth in the Act." *Massachusetts v. Morash*, 490 U.S. 107, 113 (1989). The statutory definition of a covered "plan" "merely constructs a tautology, defining an employee benefit plan as 'any plan, program or fund' established or maintained by an employer that provides certain benefits to employees." *Belanger v. Wyman-Gordon Co.*, 71 F.3d 451, 454 (1st Cir. 1995) (quoting 29 U.S.C. § 1002(2)(A)). "[T]he Supreme Court has made it very clear that an employee benefit may be considered a plan for purposes of ERISA only if it involves the undertaking of continuing administrative and financial obligations by the employer to the behoof of employees or their beneficiaries." *Id.* In other words, ERISA is not implicated when the employer makes a "one-time, lump-sum payment [that is] triggered by a single event [and] requires no administrative scheme whatsoever to meet the employer's obligation." *Fort Halifax Packing Co., Inc. v. Coyne*, 482 U.S. 1, 12 (1987). Put simply, "the existence

of a plan turns on the nature and extent of an employer's benefit obligations." *Belanger*, 71 F.3d at 454.

Here, the only facts Byrd alleges regarding the two benefits he asserts are covered ERISA plans are as follows: Mott MacDonald pays severance to full-time employees of two weeks' salary for each year of employment, ECF No. 36 at ¶ 32, and Mott MacDonald pays a short-term disability "top off" benefit of two thirds of a full-time employee's salary while that employee is on short-term disability, *id.* at ¶ 41. The remainder of Byrd's ERISA allegations are legal conclusions unsupported by factual allegations. *See id.* at ¶¶ 65–75. As Byrd argues in his opposition to the motion to dismiss, Mott MacDonald did not provide any evidence that the "top off" benefit is an exempted payroll practice[6] or that severance is a one-time, lump sum payment. *See* ECF No. 38 at 8–9. Moreover, I may not consider Mott MacDonald's factual assertions in its motion to dismiss that do not appear in Byrd's amended complaint. *See Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001). Nonetheless, it does not follow that Byrd's ERISA claim therefore survives the motion to dismiss and proceeds to discovery. *See* ECF No. 38 at 8–9. To properly state a claim, a plaintiff must allege enough facts to narrate a plausible claim for relief. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 544). A complaint that offers only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Byrd has not alleged enough facts for me to infer that Mott MacDonald's provision of either the "top off" benefit or severance "involves the undertaking of continuing administrative and financial obligations by the

---

[6] Regulation promulgated by the Department of Labor provides that "[p]ayment of an employee's normal compensation, out of the employer's general assets, on account of periods of time during which the employee is physically or mentally unable to perform his or her duties, or is otherwise absent for medical reasons" is not an "employee welfare benefit plan" within the meaning of ERISA. 29 C.F.R. § 2510.3-1(b)(2) (2025).

employer to the behoof of employees or their beneficiaries" as required for the benefits to be considered ERISA "plans." *Belanger*, 71 F.3d at 454. Because Byrd's complaint does not contain enough factual allegations to "plausibly show that his [amended c]omplaint involves an ERISA covered plan," *Díaz-O'Neill*, 2022 WL 18635600, at *5, Byrd's Count V for ERISA interference is DISMISSED.

### E.  Counts VI–VIII

In his amended complaint, Byrd brings forth three further claims against Mott MacDonald that he did not allege in his initial complaint. *Compare* ECF No. 1, *with* ECF No. 36. The three new claims include disability discrimination in violation of the ADA, age discrimination in violation of the ADEA, and violation of the Massachusetts FEPA. ECF No. 36 at 12–15. Mott MacDonald moves to dismiss these claims, arguing Byrd failed to timely exhaust his administrative remedies. *See* ECF No. 52 at 1. Byrd argues his claims are timely because he began receiving minimal billable assignments within the 300-day statutory period before he made his administrative complaint. ECF No. 53 at 1–2. He further argues his claims are timely under the continuing violation doctrine. *Id.* at 2–5. Mott MacDonald replies that the billable assignments are simply consequences of the adverse employment action, it is insufficient to make his claims timely, and the continuing violation doctrine does not apply. ECF No. 54 at 1–2.

Byrd's claims of disability discrimination and age discrimination are subject to administrative exhaustion requirements under state and federal law. *See* 42 U.S.C. § 2000e-5(e)(1) (ADA); 29 U.S.C. § 626(d)(1) (ADEA); Mass. Gen. Laws ch. 151B, § 5 (FEPA). The administrative complaint for each claim must be filed with the state or local agency that enforces anti-discrimination laws, which for Massachusetts is the Massachusetts Commission Against Discrimination (MCAD), within 300 days after the

date of the alleged unlawful employment practice.[7] *See Kahriman v. Wal-Mart Stores, Inc.*, 115 F. Supp. 3d 153, 160 (D. Mass. 2015) (ADA and FEPA); 29 U.S.C. § 626(d)(1)(B) (ADEA). The parties agree that Mott MacDonald notified Byrd of his demotion on November 30, 2022. *See supra* n.4. Byrd filed his complaint of discrimination for his ADA, ADEA, and FEPA claims with the MCAD and the Equal Employment Opportunity Commission (EEOC) on October 23, 2023—327 days after he received notification of his demotion. ECF No. 36 at ¶ 12. Accordingly, Byrd failed to timely exhaust his administrative remedies unless he establishes another basis for timeliness.[8] Byrd argues his claims are timely because Mott MacDonald assigned him "de minimus [sic]" billable assignments within the 300-day statutory period before he made his administrative complaint and the claims are timely under the continuing violation doctrine. ECF No. 53 at 1–2.

As to Byrd's first argument that discriminatory acts happened within the statutory period when he started receiving insufficient billable assignments in January 2023, it is "well established that, in employment discrimination actions, limitations periods normally start to run when the employer's decision is made and communicated to the affected employee." *Morris v. Gov't Dev. Bank of P.R.*, 27 F.3d 746, 750 (1st Cir. 1994). This is true even if the plaintiff does "not know all the facts that support his claim" at the time the countdown begins to run. *Id.*; *see also Meléndez-Arroyo v. Cutler-Hammer of P.R. Co., Inc.*, 273 F.3d 30, 36–37 (1st Cir. 2001) (rejecting plaintiff's argument that the

---

[7] Claims under the ADA and ADEA normally are subject to a 180-day filing period before the Equal Employment Opportunity Commission, but the filing period is extended to 300 days when the administrative complaint is filed with a parallel state agency, here, the MCAD. *See* 29 U.S.C. §§ 626(d)(1)(B), 633(b); 42 U.S.C. § 2000e-5(e)(1).

[8] Byrd is not seeking to invoke the doctrine of equitable tolling, *see* ECF No. 44 at 5, therefore I do not address whether equitable tolling applies.

limitations period did not begin to run until plaintiff became aware of the full impact of the demotion). The fact that Byrd may not have realized the severity of the consequences of his demotion does not save his claims from dismissal for failure to timely exhaust his administrative remedies.

That leaves the continuing violation doctrine. The continuing violation doctrine is "an equitable exception to [employment discrimination laws'] statute of limitations, [that] 'allows an employee to seek damages for otherwise time-barred allegations if they are deemed part of an ongoing series of discriminatory acts and there is "'some violation within the statute of limitations period that anchors the earlier claims.'" *Lockridge v. Univ. of Me. Sys.*, 597 F.3d 464, 474 (1st Cir. 2010) (quoting *O'Rourke v. City of Providence*, 235 F.3d 713, 730 (1st Cir. 2001)); *see also Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002) (holding a plaintiff may seek damages for hostile work environment claims under Title VII that fall outside of the limitations period if "an act contributing to the claim occurs within the filing period"). The First Circuit has recognized two types of continuing violations: systemic violations and serial violations. *Thornton v. United Parcel Serv., Inc.*, 587 F.3d 27, 33 (1st Cir. 2009).

To state a claim under the systemic violation theory, Byrd must identify the specific discriminatory policy or practice he was subjected to. *See id.* at 33 ("[G]eneral references to some vague, undefined policy of discrimination are not . . . sufficient to make out a . . . showing that a discernible discriminatory policy was in effect." (quoting *Mack v. Great Atl. & Pac. Tea Co., Inc.*, 871 F.2d 179, 184 (1st Cir. 1989) (alterations in *Thornton*)). Byrd has identified no discriminatory practice or policy he was subjected to, let alone with particularity. He has not stated a claim of a systemic violation.

The "classic example" of a continuing serial violation is a hostile work environment claim. *Tobin v. Liberty Mut. Ins. Co.*, 553 F.3d 121, 130 (1st Cir. 2009). Hostile work environment claims arise out of the cumulative effects of individual acts of harassment, each of which on its own may not be actionable. *Morgan*, 536 U.S. at 115. The unlawful employment practice "cannot be said to occur on any particular day"; rather, the series of individual acts combine to constitute the unlawful employment practice. *Id.* at 115–17. For a hostile work environment claim to be timely, the claim must be filed within the statutory period for a claim arising from any act that is part of the hostile work environment. *Id.* at 118. Importantly, the continuing violation doctrine is a narrow exception to the limitations period, involving hostile work environment claims that are different in kind from discrete acts of discrimination. *See Ayala v. Shinseki*, 780 F.3d 52, 57 (1st Cir. 2015). Discrete acts of discrimination—such as a demotion—are distinct from hostile work environment claims, and the continuing violation doctrine does not apply to extend the limitations period for a claim based on a discrete act. *See id.* "It is well-established that the statute is triggered upon the initial occurrence of the discrete adverse employment action, even if 'the *effect* of the employer's [actions] continues to be felt by the employee for as long as he remains employed.'" *Id.* at 57–58 (quoting *Tobin*, 533 F.3d at 132).

Byrd's claims of disability and age discrimination arise from the discrete act of his demotion to a non-salaried position where he was compensated only for billable work. *See* ECF No. 36 at ¶ 31. This discrete act occurred on the day Mott MacDonald notified him of his demotion, which the parties agree was November 30, 2022. Although Byrd did not know at the time how much billable work he ultimately would be assigned, the demotion itself was enough to put him on notice that he may have a claim because

demotions are "easy to identify and immediately actionable." *Ayala*, 780 F.3d at 58. If I were to hold otherwise and allow Byrd's claims to move forward on a continuing violation theory despite the adverse employment action having occurred on a particular day, the "narrow exception" for continuing violations would swallow the limitations period rule. Accordingly, Byrd failed to timely exhaust his administrative remedies by filing his complaint of discrimination with the EEOC and the MCAD 327 days after he learned of his demotion, and his Counts VI, VII, and VIII are DISMISSED.

## V.    Conclusion

For the reasons discussed above, Mott MacDonald's renewed motion to dismiss (ECF No. 37) is GRANTED and all of Byrd's claims against it are DISMISSED (ECF No. 36).

**SO ORDERED.**

Dated this 10th day of September, 2025.

/s/ Stacey D. Neumann
**UNITED STATES DISTRICT JUDGE**